[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On September 13, 1993, the plaintiff mother, Sally Karolkowski, was granted a 14 day ex parte restraining order and a temporary child custody order against the defendant father, Travis Capps, (Thim, J.) for their two minor children pursuant to 46b-15
of the Connecticut General Statutes. In her affidavit attached to the application the mother alleged that the father had physically abused her and the children over a period of time while they lived together as a family in North Pole, Alaska. On September 30th, 1993, the court (Thim, J.) issued a second ex parte restraining and child custody order to the mother similar to the first order.
Some of the background facts are that the mother, the father and the two children had lived as a family, in North Pole, Alaska, from March, 1991 to July, 1993, approximately two years and three months. In July, 1993 the defendant father moved out of the family home and stayed with his parents and with a girl friend part of the time. On or about Labor Day weekend, 1993, he physically assaulted the wife, according to her testimony and affidavit and threatened to take the children from her. Without telling the father, she contacted the woman's shelter in Fairbanks, Alaska and had a friend taker her and the children there in early September. On September 5th, she left Fairbanks with the children and came to Connecticut, moving in with her parents in Fairfield on September 6th. She intends to remain a permanent resident of Connecticut along with her two children.
When the father learned that the mother and the children had left, he retained counsel in Alaska. Based on his affidavit, and that of his attorney, the father obtained an ex parte order in Fairbanks Superior Court (Beistline, J.) on September 27, 1993. In his affidavit the father alleged that the mother had physically abused the children and they were at risk. (The ex parte order by the court in Alaska is dated September 27, 1993.) The ex parte order was filed with this court by Connecticut counsel for the father on October 4, 1993. The ex parte decree ordered the mother to return the children to Fairbanks, Alaska and granted temporary custody to the father. It was served on the mother in Connecticut CT Page 8337 on September 30, 1993, and it was the first time she knew of this order.
On October 1, 1993, both parties appeared in this court for a hearing on the mother's application to extend the ex parte orders entered on September 15, 1993 by this court (Thim, J.) for an additional 90 days pursuant to 46b-15(d) of the Connecticut General Statutes. The court heard testimony from both the parties and other witnesses on October 1st, 4th and 5th. The attorney for the father argued that this court was obligated to give full faith and credit and enforce the ex parte orders granted in Alaska on September 27, 1993. He also argued that Alaska had jurisdiction under the Uniform Child Custody Jurisdiction Act (UCCJA), et seq., of the Connecticut General Statutes.
The attorney for the mother argued that the Alaska decree was not entitled to full faith and credit because the mother never received notice of any proceeding in Alaska prior to September 30, 1993, when she was given a copy of that decree in this court. It is undisputed that neither party appeared before the Alaska court and that no hearing had been held where either party had appeared. Counsel also argued that this court has jurisdiction under 46b-93(2) and (3) of the Connecticut General Statutes and that both parties were before the court at the October 1, 1993 hearing.
A custody decree of a sister state may be entitled to full faith and credit in this state provided that the court in the other state, in this case Alaska, had jurisdiction of the parties and the issue was litigated. Miller. Miller, 158, Conn. 217, 220. But here the court in Alaska based its ex parte decree granting the father temporary custody of the two children solely on his affidavit and an affidavit of his attorney. It is undisputed that the mother left Alaska with the two children and arrived in Fairfield, Connecticut on September 6, 1993, and could not have nor did she receive notice of the Alaska decree until September 30, 1993 when she was in this court. Therefore, this Court finds that the ex parte Alaska decree is not entitled to full faith and credit.
Counsel for the mother also urged the court to retain jurisdiction pursuant to 46b-93 of the Connecticut General Statutes, subsections (2) and (3) which provide in part as follows:
 The superior court shall have jurisdiction to make a child custody CT Page 8338 determination . . . if . . . (2) it is in the best interest of the child that a court of this state assume jurisdiction because (A) . . . the child and at least one contestant, have a significant connection with this state, and (B) there is available in this state substantial evidence concerning the Child's present or future care, protection, training and personal relationships; or (3) the Child is physically present in this state and . . . (B) it is necessary in an emergency to protect the child because he has been subjected to threatened with mistreatment or abuse or is otherwise neglected or dependent . . . .
The court has considered the testimony and has reviewed all the exhibits and finds the following facts.
This court can assume jurisdiction if it is in the best interest of the child and one parent has a significant connection with this state and there is substantial evidence concerning the child's present or future well-being. The court can also assume jurisdiction when the child is physically present in this state and it is necessary in an emergency to protect the child because he has been subjected to or threatened with abuse or neglected. The definition of a neglected child is one that is defined under 46b-120
of the Connecticut General Statutes. "A neglected child is defined as one being denied proper care and attention, physically, educationally, emotionally or morally or is being permitted to live under conditions, circumstances or associations injurious to his well-being."
Some of the following background fact's are not in dispute. The parties have never been married. In 1988, the mother at age 15 became pregnant. The defendant father, Travis Capps, acknowledges paternity. Patrick was born on March 17, 1989 in Fairfield, Connecticut, and he is now four and one half years old.
The mother and Patrick lived with her parents in Fairfield, Connecticut. When the mother was 18 years old and Patrick was over two years of age, they moved to live with the father in his parents' home in North Pole, Alaska. Their second child, Kaylee, was born on September 27, 1992, in North Pole, Alaska, and she is now one year old. The parties and their two children lived with the father's paternal grandparents for approximately two years. CT Page 8339 Both the mother and father testified that the paternal grandparents provided them and their children with food, clothes, and other necessities and nurtured and loved both the children.
The parties' problems escalated after a log cabin the father was building burned down in July, 1992. They, were forced to live with, the paternal grandparents for the next ten months. In late May of 1993, the parties and their children moved into a partially rebuilt log cabin. Their personal relations began to seriously deteriorate, and in July, 1993 the father moved out to live with a girl friend and at times with his parents. The mother was left alone with her two young children in the partially rebuilt cabin from May to early September, 1993.
During this five month period, testimony of the parties is in dispute. The court found the testimony of the mother credible and persuasive and compelling and finds the following facts, which the father and the paternal grandfather denied.
There were numerous occasions of physical violence by the father. Just prior to Kaylee's birth, the father kicked the mother in the back, knocked her to the ground and tried to choke her. On the Fourth of July weekend, he came to the cabin to take the children from her. When the mother resisted, he knocked her to the ground while she was holding the infant daughter in her arms, sustaining bruises and contusions to the mother and the child. Shortly thereafter, the father came and took Patrick with him for three days without telling the mother where they had gone. On another occasion, after a verbal altercation, the father assaulted the mother with his fists, pushed her to the floor and kicked her in the ribs in front of the children. He also tried to run her over with a motor vehicle. This past Labor Day weekend, he appeared at the cabin again to take the children and when she resisted, he threatened to kill her. He regularly used marijuana and alcohol, and she saw him drunk on a number of occasions. During this five month period, she was alone with the children in the partially rebuilt cabin, without a telephone or transportation. She had no money nor a credit card. There was no water to shower with and the children did not have proper and adequate clothing. Patrick was without shoes just prior to leaving Alaska.
Based on these findings, the mother was justified in leaving Alaska with the children without notifying the father. She left with good cause, to protect herself and the children from his physical violence and threats. The court accepts the mother's CT Page 8340 reasons that she feared for her life and that he Would take the children from her.
After the mother and children came to live with her parents in Fairfield, Connecticut on September 6, 1993, the father telephoned her on several occasions from Alaska and threatened to come to her parents' home and shoot her. The court concludes that the mother and the children are in immediate physical danger of the father under 46b-15 of the Connecticut General Statutes.
The court also finds that Patrick and the mother have a significant connection with this state. They both lived here in Fairfield for over two years with her parents after Patrick was born. The maternal grandmother testified that she will provide Patrick, Kaylee and her daughter with a safe and adequate home. The mother testified that she intends to remain in Connecticut as a permanent resident, and in due time, become gainfully employed here.
The court further finds that the mother has been the primary caretaker for both children since they were born. According to the testimony of witnesses that saw her parenting skills while she lived in Connecticut, the mother has demonstrated exceptional parenting skills, psychological stability and has provided for the daily personal needs of both children. The mother is the primary parent to whom the children must look to for support and nurturance. She has in the past and will be able in the future to provide a stable, secure, loving environment for the two children.
On the other hand, the father testified that he has worked full time as a truck driver in Alaska and earned about $500.00 a week.
From her in court testimony and in her report dated October 4, 1993 (plaintiff's exhibit A), Doreen Timmerman, an expert family therapist, concludes that the mother is their primary caretaker, stating in part:
 . . .there appears to be no basis for concern that P.J. [Patrick] and Kaylee are at risk with their mother or mother's family. P.J. freely spoke in front of his mother about his feelings and neither children were fearful or anxious, shy or intimidated in the presence of CT Page 8341 their mother. They exhibited none of the characteristic symptoms that would indicate an abusive experience with their mother. To the contrary, Sally was appropriately affectionate and respectful to a full range of expressions of her son's experience. Her goals were appropriate in establishing protection and safety, as well as her desire to adequately learn additional parenting skills that were in the best interest of her children.
 It would be an extremely destructive event for these children to be removed from their primary caretaker, because of allegations that appear to have no basis in reality. The damage to them both emotionally and developmentally would be extensive and a lifetime wound.
 I strongly urge the court to support the continued relationship of Sally as primary caretaker to her children, P.J. and Kaylee.
 It would be best if therapy continued for all family members and that ultimately, the adults in this family could work towards maintaining a relationship with these children in a way that was best for them. It would also be useful for the adults to be in individual treatment and perhaps to work with the State of Alaska's Child Protection Agency if any type of visitation to that State were to come about.
From the foregoing findings, the court finds it has jurisdiction of the parties and their children under 46b-93(2) and (3) of the Connecticut General Statutes and grants temporary custody to the mother.
The ex parte orders in the Alaska decree dated September 27, 1993 granting temporary custody to the father is hereby vacated.
From the testimony and evidence presented, the court further finds that the mother is in immediate fear of physical harm CT Page 8342 and from threats to take her life as recent as late September, 1993.
For the foregoing reasons, the following orders may enter.
1. The ex parte restraining order and temporary custody of the children filed in this court on September 15 shall be extended an additional 90 days.
 Either party may petition this court to modify this order as to temporary custody or visitation in accordance with 46b-56
of the Connecticut General Statutes or petition the Probate Court of Fairfield for removal of a parent as guardian of a child pursuant to 45a-609 and 45a-610 of the Connecticut General Statutes.
2. The Family Relations Office in this court shall prepare a full child custody evaluation. They shall contact the proper agency in Alaska to provide information relative to the father, the paternal grandparents, and any other person that can provide relevant information relative to the best interests of the children.
3. A psychological evaluation of both parents and the minor child Patrick shall be performed and filed with the court.
4. The children, Patrick and Kaylee, shall not be removed from the State of Connecticut without an order from this court.
5. The father and paternal grandparents may have supervised visitation with the children in Connecticut as recommended by the Family Relations Office.
6. Attorney Celia Rosenberg is appointed attorney and guardian ad litem to represent the two children in these proceedings.
ROMEO G. PETRONI, JUDGE